UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:25-CVD-

| | |
|---|---|
| **MARCEL STARK,**<br><br>       **Plaintiff**<br><br>v.<br><br>**BARCLAYS BANK DELAWARE,**<br><br>       **Defendant** | **COMPLAINT**<br>**WITH DEMAND FOR TRIAL BY JURY** |

## PRELIMINARY STATEMENT

**NOW COMES** Plaintiff, Marcel Stark, by and through counsel, and pursuant to the Fair Credit Billing Act (part of the Truth in Lending Act), 15 U.S.C. § 1666 ("FCBA"), the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. (the "NCDCA"), and North Carolina's unfair and deceptive acts or practices statutes, N.C. Gen. Stat. § 75-1.1 et seq. ("UDAP"), respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 2201, 15 U.S.C. § 1640(e), 15 U.S.C. §1691e(f) and 28 U.S.C. § 1331.

2. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

4. This case is filed within the one-year statute of limitations for violations of the FCBA.

5. This case is filed within the four-year statute of limitations for violations of the NCDCA and N.C. UDAP.

## PARTIES

6. Plaintiff is a natural person, residing in Mecklenburg County, who entered into an open-end credit transaction, namely a Mastercard account, with Barclays Bank Delaware (the "Bank") for personal, family, and household purposes.

7. Barclays Bank Delaware is a banking entity organized under the laws of Delaware. At all relevant times, the Bank, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a credit card plan with MasterCard, on which the Bank assessed finance charges.

8. At all relevant times, the Bank did business throughout the State of North Carolina, including Mecklenburg County.

## FACTUAL ALLEGATIONS

9. Plaintiff had a Mastercard credit card account with the Bank ending in 8290 (the "Account"). The Account was opened for personal, family and household purposes.

10. On or about July 20, 2024, Plaintiff was dining at La Guerite in Cannes, France with 6 friends when he was charged €13,000 for one bottle of Clase Azul and two bottles of Dom Perignon totaling approximately $14,194.70 in U.S. Dollars.

11. Neither Plaintiff nor anyone at his table ordered the Clase Azul or the Dom Perignon.

12. Neither the Clase Azul nor the Dom Perignon was brought to their table.

13. The friends wanted to split the bill.

14. The La Guerite restaurant does not have a digital signing pad, all signatures are done on the paper receipt.

15. Plaintiff did not sign a receipt.

16. Plaintiff requested a copy of the receipt.

17. Despite repeated requests for a copy of the receipt, La Guerite has never provided Plaintiff with a copy of the receipt.

18. The receipt Plaintiff provided to Barclays Credit Card showing an "Erroneous Transaction" was a copy given to the Plaintiff by his friend whose credit card was also erroneously charged for the alcohol.

19. Plaintiff's friend disputed the transaction with his credit card provider and the Plaintiff's friend was refunded the monies by his credit card provider.

20. Within 45 minutes of leaving the restaurant and being shown the receipt by his friend, Plaintiff realized the erroneous transaction and immediately contacted Barclays seeking assistance for the erroneous transaction (the $14,194.70 charge).

21. Plaintiff also contacted La Guerite and was told they would correct the transaction, and he would receive a call back.

22. On or around July 31, 2024, Plaintiff realized that La Guerite had not corrected the transaction and had not credited the monies back to his Barclays Credit Card.

23. On or around July 31, 2024, 12:51 p.m., Plaintiff contacted Barclays Credit Card at 844-234-2500 to dispute the erroneous transaction.

24. The Plaintiff was transferred multiple times and was provided with a fax number 866-710-7693 to which he was to send his dispute.

25. On or around August 2, 2024, 1:16 p.m., Plaintiff called Barclays Credit Card at 844-724-2600 and spoke with "Nelly" in the dispute department. This call lasted forty minutes.

26. After a lengthy conversation, Plaintiff was instructed to send the dispute documents to resolutionnv@barclaycardus.com. (Exhibit C).

27. On or around August 7, 2024, 1:05 p.m., Plaintiff received a call from Barclays Credit Card at 302-300-3664 which lasted seven minutes.

28. During this call the claims department informed Plaintiff that his dispute was under review, and that Plaintiff would receive notification via mail.

29. On or about August 11, 2024, Barclays sent Plaintiff a billing statement showing the erroneous transaction. (Exhibit A).

30. On or around August 12, 2024, 12:53 p.m., the Plaintiff called Barclays Credit Card at 844-724-2600 and spoke with customer service about the status of his claim. This call lasted thirty-five minutes.

31. During this call, the Plaintiff was told to resend the dispute documents as Barclays Credit Card still did not have them.

32. The Plaintiff faxed the documents again to 866-710-7693 and was instructed by the customer service representation to contact the fraud department at 888-232-0778. (Exhibit C).

33. On or about August 13, 2024, 11:33 p.m., the Plaintiff received a call from Barclays Credit Card at 302-300-3664. During this twenty-one-minute call, the Barclays Credit Card customer service representative informed the Plaintiff that his claim had been denied.

34. The Plaintiff asked to speak with a supervisor, but was told that none were available, but Plaintiff would be contacted within 24 hours.

35. On or about August 26, 2024, 9:20 am, Plaintiff received a call from Barclays Credit Card at 844-724-2600. This call lasted twenty-two minutes.

36. During this call, the Barclays Credit Card customer service representative, whom Plaintiff initially thought was a supervisor, informed Plaintiff that his claim was still under review despite receiving a denial letter. (Exhibit D).

37. The Plaintiff was told his dispute was being re-evaluated, but no further information was provided.

38. The Plaintiff requested to speak with a supervisor again, but was told none were available and one would contact him within 24 hours.

39. On or about September 9, 2024, 1:17 p.m., Plaintiff contacted Barclays Card Resolution at 844-724-2600.

40. During this thirty-nine-minute call as a follow up to the denial letter he received, the Plaintiff reiterated his request for a supervisor to contact him, as Plaintiff was promised during his call on August 21.

41. On or around September 11, 2024, 12:47 p.m., Plaintiff called Barclays Fraud Department at 877-523-0478 to dispute the charge on the grounds of fraud. This call lasted for thirty-three minutes.

42. After discussing the issue with a representative, Plaintiff was transferred to a supervisor who assured him that someone from the fraud escalation team would contact him.

43. On or about September 12, 2024, 9:09 a.m., Plaintiff received a call from a senior account specialist at Barclays Credit Card named "Ganesh" whose operator number was #ICSPAG. The call originated from 302-300-3664. This call lasted thirty-six minutes.

44. Ganesh informed Plaintiff that his claim was denied and refused to provide any merchant validation for the charge, stating that "the card was present at the time of the transaction."

45. Despite Plaintiff's multiple attempts to explain the overcharge and fraudulent nature of the dispute, Ganesh confirmed that no investigation was undertaken and that no one from Barclays had reached out to the merchant.

46. Ganesh also refused to provide a signed receipt or notes from the conversation.

47. Ganesh suggested Plaintiff file the issue as a "Fraud Claim," which was the first time this had been mentioned by the Bank, though Plaintiff previously done this.

48. The Plaintiff had explicitly stated in six previous calls that the charge was fraudulent.

49. Ganesh told Plaintiff to send a letter to the Office of the President at PO Box 8885, Wilmington, Delaware, 19899.

50. On or about September 16, 2024, Plaintiff sent a certified letter to Barclays Bank, Office of the President, PO Box 8885, Wilmington, Delaware 19899. (Exhibit B).

51. On or about October 4, 2024, 4:09 pm, Plaintiff received a call from "Amanda" at the Office of the President at 302-300-3664.

52. This call lasted for twenty-three minutes, wherein Amanda confirmed the file had been escalated to her.

53. Amanda assured the Plaintiff that she would review the case and respond within a week, confirming she had received all Plaintiff's documents.

54. On or about October 4, 2024, 4:09 p.m., the Plaintiff received a call from Amanda at 302-300-3664. This call lasted 23 minutes.

55. Amanda who confirmed the file had been escalated to her. She assured the Plaintiff that she would review the case and respond within a week, confirming she had received all his documents.

56. On or about October 15, 2024, 3:42 pm, the Plaintiff received a call from Amanda at 302-300-3664. This call lasted for 60 minutes.

57. The Plaintiff again explained the situation in detail, reaffirming that he followed all procedures to contact the merchant before filing a claim with Barclays Credit Card.

58. Amanda stated she would review the case and get back to the Plaintiff within a few days.

59. On or about October 23, 2024, 2:01 pm, Plaintiff received another call from Amanda at Barclays at 302-300-3664. This call lasted forty-nine minutes.

60. Amanda informed Plaintiff that since the claim was past 60 days, she could not offer any assistance.

61. The Plaintiff attempted to explain that the delay was due to Barclays' lack of response, and he urged Amanda to try to resolve the issue.

62. Amanda stated that she could not, and that Plaintiff would need to consult an attorney.

63. Plaintiff properly submitted his dispute pursuant to 15 U.S.C. §1666(a).

64. Any delay in the Plaintiff's dispute process was due to Barclays' lack of response.

65. The Bank failed to reasonably investigate, did not correct the billing error, and the $14,194.70 charge (with associated interest and fees) remained as a charge on the Account and in the billing statements.

66. The Bank's actions are part of a pattern or practice of failure to comply with obligations under the Fair Credit Billing Act.

67. As a result of the Bank's conduct, Plaintiff has suffered actual damages in the form of, among other things, lost credit, harm to his credit reputation and credit score, reputational harm, lost time, embarrassment, frustration, aggravation, and inconvenience.

68. At all times pertinent hereto, the Bank was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Bank.

69. At all times pertinent hereto, the conduct of the Bank, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff.

## COUNT I – FAIR CREDIT BILLING ACT

70. The Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

71. The Bank's act of billing the Plaintiff for $14,194.70, plus interest and fees, for property or services not delivered to the Plaintiff constitutes a billing error within the meaning of 15 U.S.C. § 1666(b).

72. As discussed more fully *supra*, Plaintiff timely notified the Bank of the billing error by submitting to the Bank written notices of the billing error within sixty days of receiving the billing statements that contained the error.

73. With each of Plaintiff's disputes, the Bank violated the Fair Credit Billing Act by failing to correct the Account or perform a reasonable investigation that 15 U.S.C. § 1666(a)(3)(B) requires.

74. As a proximate result of the Bank's violations of the Fair Credit Billing Act, Plaintiff has suffered and is entitled to actual damages (including mental and emotional distress), and statutory damages consisting of twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures, plus costs and attorneys' fees. See 15 U.S.C. §1640(a).

75. **WHEREFORE** the Plaintiff demands judgment for actual and statutory damages, costs, and attorneys' fees against the Bank.

## COUNT II – NORTH CAROLINA DEBT COLLECTION ACT

76. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

77. The Bank was a "debt collector" within the meaning of N.C. Gen. Stat. § 75-50(3).

78. The Plaintiff was a "consumer" within the meaning of N.C. Gen. Stat. § 75-50(1).

79. The charge of $14,194.70 (plus interest and fees) was a "debt" within the meaning of N.C. Gen. Stat. § 75-50(2).

80. In each of the several billing statements that reflected the amount of the Erroneous Transaction of $14,194.70 (plus interest and fees) and several harassing phone calls and emails, the Bank falsely represented the character, amount, or extent of a debt.

81. In so doing, the Bank violated N.C. Gen. Stat. §§75-51 (threats and coercion) 75-52 (harassment), and 75-54(4), which prohibits the false representation of the character, amount or extent of a debt.

82. The representations were false because Plaintiff did not authorize the debt represented by the erroneous transaction.

83. **WHEREFORE** the Plaintiff demands judgment against the Bank pursuant to N.C. Gen. Stat. § 75-16.1 and § 75-56 for actual damages, treble damages, civil penalties between $500 and $4,000 for each violation of the NCDCA, and attorneys' fees and costs.

## COUNT III – NORTH CAROLINA UNFAIR AND DECEPTIVE ACT

84. The Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

85. The Bank's activity constitutes commerce with the meaning of North Carolina's UDAP statute, N.C. Gen. Stat. § 75-1.1.

86. Without limitation, in the course of the transactions, acts and omissions described herein, the Bank engaged in the following conduct:

    a. Unlawfully and improperly investigated the $14,194.70 erroneous transaction on the Plaintiff's credit card;

    b. Unlawfully and improperly retained $14,194.70 of the Plaintiff's money;

    c. Misrepresented to the Plaintiff that had not submitted proper documentation to dispute the $14,194.70 charge within the timeframe specified by the FCBA when he had actually done so; and

    d. Continually refuses to refund the $14,194.70 charge to the Plaintiff.

87. This conduct, in turn, violated North Carolina's UDAP statutes, N.C. Gen. Stat. § 75-1.1, *et seq*.

88. As a proximate result of Bank's acts and omissions, Plaintiff has suffered and continues to suffer, actual damages including mental and emotional distress, humiliation, and embarrassment.

89. **WHEREFORE** Plaintiff demands judgment against Bank for actual damages, treble damages, and attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

90. Plaintiff exercises the right to a trial by jury on all issues so triable.

**TODAY** is January 29, 2025.

                                              **WILLIAMS & PERRY**

                                              By:*/s/ Stacy L. Williams*
                                              Stacy L. Williams
                                              NC Bar Number: 26874
                                              109 W. Statesville Ave
                                              Mooresville, NC 28115
                                              Telephone: 704-663-4187
                                              Facsimile: 704-663-4178
                                              stacy@williamsperry.com
                                              *Attorney for Plaintiff*